UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

    SNEZANA LJUBIC and                               Case No. 03-32636
    BOBAN LJUBIC,

                Debtors.                                        Chapter 7
_____

VIRGINIA E. GEORGE, TRUSTEE,

                Plaintiff,
v.                                                                 Adversary No. 04-2213

GUARANTY MORTGAGE COMPANY, INC.,

                Defendant.
_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
_____

       The chapter 7 trustee brought this adversary proceeding to avoid the mortgage lien of the defendant and preserve it for the benefit of the estate. The defendant answered the complaint and, due to the complexity of the subordinated lien held by Charles Cass on the same property, the matter was compromised. That compromise was subsequently withdrawn by the trustee.

       The trustee then filed a motion for summary judgment, seeking a determination that the recording of the mortgage on the debtors' property constitutes an avoidable preferential transfer. The trustee and the defendant both submitted briefs and stipulated facts.

       This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

The following facts were stipulated to: Prior to June 9, 2003, the debtors' home was encumbered by three mortgages; two were in favor of Shelter Mortgage Company (the defendant here and predecessor in interest to Guaranty Mortgage Company) and one was in favor of Charles Cass. On June 9, 2003, the debtors refinanced their home with Shelter, borrowed $149,100 and granted a mortgage in that amount. As a condition of the refinancing, Cass and Shelter entered into a subordination agreement in which Cass agreed to subordinate his mortgage to the Shelter refinanced mortgage. On July 2, 2003, the Milwaukee County Register of Deeds recorded the mortgage and the subordination agreement. The prior two mortgages with Shelter were satisfied and those satisfactions were recorded on July 2, 2003, and July 11, 2003. The debtors filed their petition on August 20, 2003. The debtors were insolvent during the time period relevant to the transaction at issue.

According to the affidavit of Nic Hoyer, President of Wisconsin Title Service Company, (but not stipulated to by the trustee), the refinanced Shelter mortgage was delivered to the Milwaukee County Register of Deeds not later than June 19, 2003. No other evidence of when the mortgage was delivered to the Register was submitted.

ARGUMENTS

The trustee argues the recordation of the mortgage constitutes a voidable preferential transfer pursuant to 11 U.S.C. § 547. In Wisconsin, perfection of a mortgage transaction occurs upon the date of recordation. Wis. Stat. § 706.08(1)(a). The date of recordation was July 2, 2003, 23 days after the debtors executed the promissory note, June 9, 2003, and 48 days prior to the petition date. Because Shelter would be an unsecured creditor in these proceedings if it had

2

not perfected its mortgage lien, the perfection of the mortgage allowed Shelter to receive more than it would have received under chapter 7.

Shelter counters that it tried to help the debtors by letting them consolidate their two existing mortgages with Shelter into one. Those two previous mortgages were valid and non-avoidable, and Shelter did not release them until after its new, consolidated mortgage had been duly recorded with the Register of Deeds. No money changed hands; there was merely an internal bookkeeping entry at Shelter's offices. Nor did the new consolidated mortgage cause an increase in the total debt secured by the debtors' home. Thus, during the entire consolidation process the debtors' property was encumbered by Shelter mortgages in the amount of at least $149,000 and no other lender could have acquired a lien interest superior to Shelter's mortgage. Shelter argues that the transfer is not avoidable because there was no diminution of the estate as a result of the transfer or the application of the earmarking doctrine precludes the transfer from being a preference.

DISCUSSION

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

Because the trustee seeks to avoid the transfer as preferential, she has the burden of proving all of the necessary elements of an avoidable preference. The elements of an avoidable preference are set forth in section 547(b) of the Bankruptcy Code. In relevant part, that section provides as follows:

3

> [T]he trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Under the Code, the trustee may avoid a transfer of the debtor's interest in property made within 90 days of bankruptcy that fulfills the requirements of that section, and, thus, effectively "prefers" one creditor over others. *See* 11 U.S.C. § 547(b). The granting of a security interest – here, the mortgage given to the creditor by the debtor – constitutes such a "transfer" of the debtor's interest in property. *See* 11 U.S.C. § 101(54). If, however, a security interest is given to refinance a debtor's property, section 547(e)(2) provides an exception to the trustee's avoiding power so long as the transfer is perfected at or within 10 days after such transfer. In effect, this provides for relation back of the perfection to the time the security interest was created, resulting in one secured transaction rather than two transactions; otherwise, there would be one transaction creating an unperfected security interest which is subordinate to the trustee's interest, and a second transaction that moves the creditor's interests ahead of the trustee. Shelter perfected its security interest in the debtors' property after the expiration of the 10-day relation-back grace period established by section 547(e)(2).

4

Shelter cites several cases to support its position that "diminution of the estate" is a necessary element of a preference. *See*, *e.g.*, *In re Lee*, 339 B.R. 165 (E.D. Mich. 2006); *In re Davis*, 319 B.R. 532 (Bankr. E.D. Mich. 2005); *In re Biggers*, 249 B.R. 873 (Bankr. M.D. Tenn. 2000). The *Lee* court referenced a Seventh Circuit decision, *Warsco v. Preferred Technical Group*, 258 F.3d 557 (7th Cir. 2001), wherein diminution of the estate was discussed.

In *Warsco* the purchaser of the debtor's assets, in a separate transaction that was one of the conditions for the entire deal, made a payment of $500,000 to a creditor for a promissory note on which the debtor was obligated. In essence, the recipient received part of the purchase price that would otherwise be available to all creditors had it been paid to the debtor. In opposition to the chapter 7 trustee's attempt to recover the payment as a preferential transfer, the creditor argued that the payment it received from the purchaser was not a transfer of an interest of the debtor in property. Recognizing that a preferential transfer need not be made directly by the debtor, the court noted that an indirect transfer made to a creditor by a third party on behalf of the debtor may be subject to avoidance. The court identified the fundamental issue as whether the funds used to make the payment were part of the purchase price for the debtor's assets.

In interpreting section 547, the Seventh Circuit remarked on whether the transfer diminished the debtor's estate and concluded:

> We have recognized in the past that diminution of the debtor's estate is not an element of the preference statute. However, we also have recognized that "the 'diminished estate' element of a preferential transfer is consistently applied," and we have previously refused to disturb its application. In keeping with our prior precedent and that of other circuits, we continue to consider whether the transfer in question diminished the debtor's estate.

*Id*. at 564 n. 11 (citations omitted). After considering all facets of the complex transaction, the court reversed the district court's grant of summary judgment in the purchaser's favor,

5

determining that the trustee was not afforded the benefit of all inferences that could be drawn from the unanswered questions in the record. While leaving the concept undisturbed, the court stated it would "consider" whether the estate was diminished, but it stopped short of saying this factor was determinative.

Mere substitution of new security in place of security for an old debt does not ordinarily result in a preference, because there is no diminution of the debtor's estate whereby creditors may be injured. 5 COLLIER ON BANKRUPTCY ¶ 547.03[2] (15th ed. revised). Nevertheless, the theory necessarily assumes that the creditor has a continuing security interest in the property of the debtor. The diminution of estate theory does not apply when the security interest in the released collateral has been terminated and the debtor gives new collateral which requires "re-perfection"of the creditor's security interest. *In re Prindle*, 270 B.R. 743, 747-48 (Bankr. W.D. Mo. 2001). This is especially true where state law provides an exclusive method for the perfection of a security interest. *See id*. at 748. Here we do not have a substitution of collateral; the same house was security for debt to the same creditor both before and after refinancing.

Shelter also contends the earmarking doctrine precludes recovery by the trustee. *See*, *e.g.*, *In re Heitkamp*, 137 F.3d 1087 (8th Cir. 1998); *In re Lazarus*, 334 B.R. 542 (Bankr. D. Mass. 2005).[1] In general, the earmarking doctrine states that when a third party lends money to the debtor for the specific purpose of paying off a designated creditor, that money is not "an interest of the debtor in property," so the transfer fails to satisfy one of the requirements of a preference under section 547(b). Similar to the "diminished estate" requirement, the inquiry under the

---

[1] Subsequent to the filing of the defendant's brief, the Eighth Circuit vacated the district court's judgment in *In re Lazarus*, ___ F.3d ___, No. 06-1982, 2007 WL 49649 (1st Cir. Jan. 9, 2007).

6

earmarking doctrine is whether an asset would have been available for distribution to all creditors but for its transfer to the recipient.

The application of the earmarking doctrine to the perfection of a security interest was rejected by this court's colleague in *In re Moeri*, 300 B.R. 326 (Bankr. E.D. Wis. 2003). According to that court, the earmarking doctrine applies in a refinancing situation to determine whether the debtor's payment to an existing creditor with funds borrowed from a new creditor qualifies as a preference, but it had no application in assessing the preferential nature of a separate transfer which occurred when the new creditor belatedly perfected its security interest. *See also In re Messamore*, 250 B.R. 913 (Bankr. S.D. Ill. 2000) (finding the transfer at issue was not the repayment of the existing creditor, but instead the transfer that occurred when the new creditor perfected its lien on the debtors' property more than 10 days after the closing of the loan transaction). Here, we have one creditor, not two, and the issue is perfection, not payment.

Of course, the previous discussion would not be necessary if the mortgage is deemed recorded at the time the title company delivered the mortgage to the Register, which according to the title company was not later than June 19, 2003, within the 10-day grace period. This would be a question of fact, and it must be proved to the court. If it could be proved, and if delivering the deed to the Register has the legal effect of perfection, then the perfection is considered made at the same time the security interest is established. 11 U.S.C. § 547(e)(2)(A).

Recordation is not essential to the creation of a lien. Rather, the recordation relates to third parties and the priority of their interest vis-à-vis the recorded mortgage in the subject real estate. Recordation basically involves copying the instrument into books kept for such purpose by public recordation offices. Once recorded, public notice is accomplished. 1 LAW OF DEBTORS

7

& CREDITORS § 8.23 (A. Mechele Dickerson, et al. eds., updated Jan. 2006 ). Traditionally, most statutes have provided that recordation of a mortgage is complete so as to give notice when it is delivered to the recording officer. 1 LAW OF DEBTORS & CREDITORS § 8.25.

The applicable Wisconsin statutes do not, at least explicitly, make perfection complete when a mortgage is delivered to the Register. In Wisconsin, a valid lien, effective as to third parties, is achieved only once the filing, acceptance and notation in accordance with sections 706.05, 706.08 and 59.43, Wis. Stats., takes place. Section 59.43, Wis. Stat., sets forth the duties of the Register of Deeds. After delivery of the mortgage for recording, the county register shall "cause to be recorded" all properly submitted documents. Wis. Stat. § 59.43(1)(a). The Register's duties further require that he or she

> (e) Endorse upon each instrument or writing received by the register for record a certificate of the date and time when it was received, specifying the day, hour and minute of reception, which shall be evidence of such facts. Instruments shall be recorded in the order in which they are received.
> (f) Endorse plainly on each instrument a number consecutive to the number assigned to the immediately previously recorded or filed instrument, such that all numbers are unique for each instrument within a group of public records that are kept together as a unit and relate to a particular subject.

Wis. Stat. § 59.43(1).

The obvious intent of this statute is to ensure that documents relating to a particular piece of property, in this case real estate, are recorded in the precise order in which they are received, thereby maintaining the priority of interests in the chain of title.

Section 706.05, Wis. Stat., enumerates the formal requisites for recording, which apparently were met here. The trustee argues that the possibility of rejection by the Register means that perfection must take place at recording; it cannot take place at receipt by the Register

8

as the creditor argues. While it is possible for a document to be bumped out of the order in which they are to be recorded, possibly due to defects, such as occurred in *In re Koshar*, 334 B.R. 889 (Bankr. W.D. Mich. 2005), no such rejection of Shelter's refinanced mortgage occurred.

Section 547(e)(1)(A) states that for the purpose of this section, perfection occurs when "a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." In other words, Shelter is perfected when no bona fide purchaser could record a superior interest in the real estate. Shelter asserts that this is the date the document is delivered to the Register, because it was not rejected and no one filing thereafter could obtain a superior interest. If the relevant date is the date of delivery, and if Shelter can prove it, it falls within the 10-day grace period of section 547(e)(2)(B) and cannot be avoided.

Section 706.08, Wis. Stat., sets forth the effect of nonrecordation of a conveyance. That effect is that "every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first." Wis. Stat. § 706.08(1). This describes the typical race-notice system of real estate records so ably analyzed in *Koshar*, 334 B.R. 889. As in *Koshar*, it appears that the Milwaukee County Register of Deeds does not mark each document with the date, time and minute of reception, as is required by statute, just as the Register in *Koshar* did not keep entry books containing the same statutorily mandated information. This is doubly regrettable, since the information would be "evidence of such facts." Wis. Stat. 59.43(1)(e). If documents are recorded in the order received, this will only be a problem if a good faith purchaser acquires an interest relying on a record that reveals no

9

prior interests, and the prior interest is filed but not on the record books at the time the subsequent purchaser gives value. Numerous cases in which this occurred were cited in *Koshar*, including *Butler v. Bank of Mazeppa*, 94 Wis. 351, 68 N.W. 998 (1896), in which a one hour priority ruled the day. There were apparent shenanigans in *Butler*, which allowed a questionable faith purchaser to keep his good faith assignee in place in the queue, but practically any system can be subject to the occasional anomaly. Usually, the race-notice system works, especially if paper documents are walked up to a window in the courthouse. Unfortunately for our purposes, this system was developed with little or no consideration for a bankruptcy deadline, hypothetical status of a trustee, and possible avoidance of a valid transfer, all of which takes place far from the county courthouse. The *Koshar* court found that the recording date is the date of perfection, and to do so, it had to find that in all probability a Michigan court would so find. Given the similarities in the statutes, this court finds that the date of recording is the date of perfection in Wisconsin as well.

Pursuant to section 547(e)(1)(A), a transfer of real property "is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). Since the previous discussion shows that we cannot regard the new mortgage as perfected on the same date it was created, the next question is whether a bona fide purchaser could acquire an interest superior to that of the new Shelter mortgage. It is axiomatic that a lien, even one of record, is not enforceable if there is no underlying debt. So this hypothetical bona fide purchaser, encountering the old mortgages still of record, would be put on notice that Shelter might have a superior interest. If someone other than Shelter had paid off the

old mortgages, then upon inquiry, the hypothetical BFP would learn that Shelter was no longer owed any money. The hypothetical BFP could then proceed to give value, confident that it would gain a superior position to the recorded mortgage, which would have to be satisfied on account of the absence of debt. The BFP would also be superior in interest to anyone who came along later because of the BFP's position in the perfection queue, assuming as discussed above that a hidden interest does not exist because it was delivered to the Register, who did not mark it as required by statute. This describes the trustee's position as of the date of filing, provided the perfection of the refinanced Shelter mortgage is avoided. 11 U.S.C. § 544(a)(3).

But the old Shelter mortgages were paid off by a new Shelter mortgage. A hypothetical BFP, inquiring into the existence of debt with respect to the old recorded mortgages, would be informed that the Ljubics do indeed owe a debt to Shelter. It may not be the same debt that secured the earlier mortgages, but it is still a debt on the records of the holder of those mortgages. Even if the earlier mortgages do not cover later loans (which they may), a hypothetical purchaser cannot maintain its bona fide status while ignoring the fact that the same property is encumbered by the same creditor, and a debt still exists. This was the circumstance described in *In re Biggers*, 249 B.R. 873 (Bankr. M.D. Tenn. 2000), and this court concurs in the result. There was no break in the chain of title, and the same creditor had a security interest before and after the refinance. The concept of a hypothetical bona fide purchaser is not so elastic, or tricky, as to allow the trustee to interrupt the chain of title when the same creditor had no interruption in the amount owed to it and no interruption in its interest shown in the public record.

## CONCLUSION

Although the creditor has not moved for summary judgment, the stipulated facts and

11

arguments of counsel satisfy the court that the creditor is entitled to judgment as a matter of law. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998) (entry of judgment for the nonmoving party may be proper if there is no procedural prejudice to the moving party). Therefore, the complaint will be dismissed. A separate order will be entered accordingly.

February 27, 2007

                                      Margaret Dee. McGarity
                                      Chief Judge, U.S. Bankruptcy Court